FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 28, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LORIEL C.,[1] | No. 2:19-cv-00316-MKD |
| Plaintiff, | |
| vs. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 14, 15 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing,

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

1  is fully informed.  For the reasons discussed below, the Court denies Plaintiff's

2  motion, ECF No. 14, and grants Defendant's motion, ECF No. 15.

3                                **JURISDICTION**

4         The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

5  1383(c)(3).

6                             **STANDARD OF REVIEW**

7         A district court's review of a final decision of the Commissioner of Social

8  Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

9  limited; the Commissioner's decision will be disturbed "only if it is not supported

10 by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

11 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

12 reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

13 (quotation and citation omitted).  Stated differently, substantial evidence equates to

14 "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

15 citation omitted).  In determining whether the standard has been satisfied, a

16 reviewing court must consider the entire record as a whole rather than searching

17 for supporting evidence in isolation.  *Id.*

18        In reviewing a denial of benefits, a district court may not substitute its

19 judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

20 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

ORDER - 2

1  rational interpretation, [the court] must uphold the ALJ's findings if they are

2  supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

3  F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

4  ALJ's decision on account of an error that is harmless." *Id.*  An error is harmless

5  "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

6  *Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's

7  decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

8  *Sanders*, 556 U.S. 396, 409-10 (2009).

9  **FIVE-STEP EVALUATION PROCESS**

10       A claimant must satisfy two conditions to be considered "disabled" within

11  the meaning of the Social Security Act.  First, the claimant must be "unable to

12  engage in any substantial gainful activity by reason of any medically determinable

13  physical or mental impairment which can be expected to result in death or which

14  has lasted or can be expected to last for a continuous period of not less than twelve

15  months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's

16  impairment must be "of such severity that he is not only unable to do his previous

17  work[,] but cannot, considering his age, education, and work experience, engage in

18  any other kind of substantial gainful work which exists in the national economy."

19  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

20

ORDER - 3

1    The Commissioner has established a five-step sequential analysis to

2    determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§

3    404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner

4    considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i),

5    416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

6    Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

7    404.1520(b), 416.920(b).

8    If the claimant is not engaged in substantial gainful activity, the analysis

9    proceeds to step two.  At this step, the Commissioner considers the severity of the

10    claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the

11    claimant suffers from "any impairment or combination of impairments which

12    significantly limits [his or her] physical or mental ability to do basic work

13    activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c),

14    416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

15    however, the Commissioner must find that the claimant is not disabled.  20 C.F.R.

16    §§ 404.1520(c), 416.920(c).

17    At step three, the Commissioner compares the claimant's impairment to

18    severe impairments recognized by the Commissioner to be so severe as to preclude

19    a person from engaging in substantial gainful activity.  20 C.F.R. §§

20    404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

ORDER - 5

1  education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

2  416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

3  Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

4  404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other

5  work, the analysis concludes with a finding that the claimant is disabled and is

6  therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

7      The claimant bears the burden of proof at steps one through four above.

8  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

9  step five, the burden shifts to the Commissioner to establish that 1) the claimant is

10  capable of performing other work; and 2) such work "exists in significant numbers

11  in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.*

12  *Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

13              **ALJ'S FINDINGS**

14      On November 17, 2016, Plaintiff applied for Title II disability insurance

15  benefits alleging a disability onset date of December 12, 2015.  Tr. 62, 202-03.

16  The application was denied initially and on reconsideration.  Tr. 89-91, 93-95.  On

17  January 5, 2018, Plaintiff applied for Title XVI supplemental security income

18

19

20

ORDER - 6

1    benefits; this application was escalated to the hearing level.[2]  Tr. 137, 219-34.

2    Plaintiff appeared before an administrative law judge (ALJ) on June 15, 2018.  Tr.

3    30-61.  On August 20, 2018, the ALJ denied Plaintiff's claims.  Tr. 12-29.

4         At step one of the sequential evaluation process, the ALJ found that Plaintiff

5    had not engaged in substantial gainful activity since December 12, 2015.  Tr. 17.

6    At step two, the ALJ found that Plaintiff had the following medically determinable

7    impairments: obesity, ventral hernia, anemia, tremor, major depressive disorder,

8    unspecified anxiety disorder, posttraumatic stress disorder (PTSD), and history of

9    poly-substance use disorder.  *Id.*  However, the ALJ then found that Plaintiff did

10   not have an impairment or combination of impairments that significantly limited

11   (or were expected to significantly limit) the ability to perform basic work-related

12   activities for 12 consecutive months, so Plaintiff's impairments were not severe.

13   Tr. 18.  Alternatively, the ALJ determined that if Plaintiff's mental impairments

14   were found to be severe and Plaintiff was assigned an RFC limited to simple,

15   routine tasks with a reasoning level of two or less and the need for a routine,

16   predictable work environment with no more than occasional changes, as well as

17   ───────────────

18   [2] On March 20, 2018, the ALJ's Notice of Hearing informed Plaintiff that her Title

19   XVI claim would be escalated for consideration with her Title II claim at the

20   hearing.  Tr. 137.

     ORDER - 7

only occasional, superficial contact with the public, supervisors, and coworkers, no work at an assembly line pace or other fast-paced work, and no multitasking, Plaintiff could still perform other work that existed in significant numbers in the national economy. Tr. 24. The ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as hand packager, janitor, and marker. Tr. 24. Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from December 12, 2015, the alleged onset date, through August 20, 2018, the date of the ALJ's decision. Tr. 24.

On July 19, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

//

//

ORDER - 8

1.  Whether the ALJ conducted a proper step-two analysis;[3]

2.  Whether the ALJ properly evaluated Plaintiff's symptom claims; and

3.  Whether the ALJ properly evaluated the medical opinion evidence.

ECF No. 14 at 11.

## DISCUSSION

### A.    Step Two

Plaintiff contends the ALJ erred by failing to identify any of Plaintiff's conditions as severe impairments at step two. ECF No. 14 at 16-17. At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). To establish a severe impairment, the claimant must first demonstrate that the impairment results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical or laboratory diagnostic techniques. 20 C.F.R. §§ 404.1521, 416.921. In other words, the claimant must establish the existence of the physical or mental impairment through objective

---

[3] Plaintiff combined the arguments regarding the ALJ's step two analysis and evaluation of the medical opinion evidence. ECF No. 14 at 14-17. For clarity, the Court addresses the arguments separately.

ORDER - 9

medical evidence (i.e., signs, laboratory findings, or both) from an acceptable

medical source; the medical impairment cannot be established by the claimant's

statement of symptoms, a diagnosis, or a medical opinion. 20 C.F.R. §§ 404.1521,

416.921.

An impairment may be found to be not severe when "medical evidence

establishes only a slight abnormality or a combination of slight abnormalities

which would have no more than a minimal effect on an individual's ability to

work…" Social Security Ruling (SSR) 85-28 at *3. Similarly, an impairment is

not severe if it does not significantly limit a claimant's physical or mental ability to

do basic work activities; which include walking, standing, sitting, lifting, pushing,

pulling, reaching, carrying, or handling; seeing, hearing, and speaking;

understanding, carrying out and remembering simple instructions; using judgment,

responding appropriately to supervision, coworkers and usual work situations; and

dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1522(a),

416.922(a); SSR 85-28.[4]

---

[4] The Supreme Court upheld the validity of the Commissioner's severity

regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54

(1987).

ORDER - 10

1    Step two is "a de minimus screening device [used] to dispose of groundless

2    claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "Thus, applying

3    our normal standard of review to the requirements of step two, [the Court] must

4    determine whether the ALJ had substantial evidence to find that the medical

5    evidence clearly established that [Plaintiff] did not have a medically severe

6    impairment or combination of impairments."  *Webb v. Barnhart*, 433 F.3d 683, 687

7    (9th Cir. 2005).

8    Here, the ALJ found that Plaintiff had the following medically determinable

9    impairments: obesity, ventral hernia, anemia, tremor, major depressive disorder,

10   unspecified anxiety disorder, PTSD, and history of poly-substance use disorder.

11   Tr. 17.  However, the ALJ found the record did not establish that these

12   impairments significantly limited Plaintiff's ability to perform basic-work

13   activities for 12 consecutive months.[5]  Tr. 18.

_____

15   [5] Defendant argues that Plaintiff "suggests" the ALJ incorrectly found that her

16   fibromyalgia, neuropathy, pelvic floor dysfunction, acid reflux, low back pain, and

17   bipolar disorder were not medically determinable impairments at step two.  ECF

18   No. 15 at 5 (citing ECF No. 14 at 12).  Defendant asserts that the Court should find

19   any challenge to this aspect of the ALJ's decision to be waived because Plaintiff

20   failed to brief this issue with any specificity.  *Id*. (citing *Carmickle v. Comm'r, Soc.*

ORDER - 11

First, as to physical complaints, the ALJ determined that Plaintiff's physical examinations were largely unremarkable. Tr. 20; *see, e.g.,* Tr. 423, 428, 432, 519 (the medical evidence of record established only mild obesity, as Plaintiff had a body mass index just over 30); Tr. 525-27, 534-35, 544 (the functional impact of Plaintiff's obesity was not apparent on examination even when considered with

_____

*Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008)). However, it does not appear that Plaintiff makes any argument at all as to whether the ALJ erred by not finding these impairments to be medically determinable, as Plaintiff merely states "[t]he ALJ determined that none of [Plaintiff's] physical symptoms were severe which included fibromyalgia, neuropathy, pelvic floor  dysfunction, acid reflux and low back pain." ECF No. 14 at 12 (citing (Tr. 817-18). Plaintiff continues, "[t]he ALJ then determined that the diagnosis of a bipolar disorder was not found to be a medically determinable impairment and the ALJ based this finding on the ME's testimony as a medical expert at the hearing. The ALJ referred to unremarkable mental status examinations in the record. The ALJ also stated that his finding that there was no mental medical determinable impairment was based upon a report of non-examining, non-treating physician who would have filled out forms at the Disability Determination Services, John Robinson, PhD." ECF No. 14 at 12 (citing (Tr. 18).

ORDER - 12

other impairments, such as the brief mention of mild resting tremor, ventral hernia, and anemia); Tr. 429 (May 12, 2016: upon physical examination Plaintiff had no neurologic deficits, and normal sensation, reflexes, coordination, muscle strength, and muscle tone); Tr. 535-36 (September 15, 2017: despite mention of polyarthralgia, Plaintiff had a stable gait); Tr. 544 (December 19, 2017: treatment notes indicated a resting and intention tremor to the upper and lower extremities, greater in the upper extremities; however, upon physical examination Plaintiff remained capable of carrying out requested functions; she had a stable gait); Tr. 561 (March 2, 2018: during an emergent care visit Plaintiff had no gross motor deficits, she had normal strength and reflexes, and no decreased sensation). Additionally, the ALJ considered and gave great weight to the medical opinion of J.D. Fitterer, M.D., who opined that Plaintiff's physical impairments were not severe.  Tr. 20; *see* Tr. 81.  The ALJ reasonably concluded that this evidence showed Plaintiff's physical impairments had been "at most transient and mild, and thus non-severe." Tr. 20, 24.

Next, the ALJ determined that Plaintiff's mental health impairments caused no more than mild restriction in her ability to perform basic work activities as overall Plaintiff did well with continued sobriety and treatment, and mental status examinations showed signs of little to no functional impact of her mental impairments.  Tr. 20-23; *see, e.g.,* Tr. 419 (December 30, 2015: Plaintiff's affect

ORDER - 13

was noted to be a "bit constricted", but she was otherwise doing well with maintaining sobriety and going to meetings); Tr. 421 (March 3, 2016: Plaintiff indicated she had been doing well and feeling well for the first time in years); Tr. 423, 429, 433, 437 (March 3, 2016, May 12, 2016, July 29, 2016, November 3, 2016: over the course of treatment in 2016, Plaintiff consistently presented as alert and cooperative with a normal mood and affect; she had a consistently normal attention span and concentration); Tr. 510, 520, 526, 535, 544 (February 21, 2017, June 22, 2017, July 7, 2017, September 15, 2017, December 19, 2017: Plaintiff's presentation remained consistently unremarkable); Tr. 351-52, 449, 469-70, 474, 477, 482, 485, 488, 491 (April 15, 2016, June 28, 2016, January 3, 2017, March 9, 2017, April 18, 2017, May 16, 2017, July 12, 2017, September 7, 2017: Plaintiff consistently appeared cooperative with good eye contact and she was attentive; overall her mood and affect were euthymic and normal; while at times there was mention of anxiety or lability, Plaintiff remained attentive with logical thinking and no gross behavioral abnormalities; she demonstrated intact memory, both short and long-term, and intact concentration and attention); Tr. 482, 491 (April 18, 2017, September 7, 2017: recent suicidal ideation was noted; the notations were in the context of many situational stressors such as living with her mother and joblessness); Tr. 505 (January 19, 2018: a mental status examination indicated normal cognitive function); Tr. 444-45 (February 19, 2017: Plaintiff had an overall

ORDER - 14

1  unremarkable consultative mental evaluation; she demonstrated "adequate"

2  concentration, persistence, and pace for the examination; she was cooperative

3  throughout the interview, she made good eye contact, she did not exhibit any

4  abnormal motor activities, her speech was of normal rate, rhythm, and tone, her

5  conversation was normal, she did not exhibit any loose associations, tangential,

6  circumstantial thinking or confusion, she did not exhibit any delusions, distortions,

7  preoccupations, or suicidal ideation, her affect appeared "mildly" restricted and

8  flat); Tr. 500-01 (October 9, 2017: during a mental evaluation, Plaintiff obtained

9  29 out of 30 points on a mini-mental status examination, and thus, performed

10 above the cutoff of 24 reflecting impairment; she had difficulty with serial sevens,

11 but could spell "world" forward and backward; she recalled two out of three

12 objects on a short delay memory task; she followed a simple command; she

13 exhibited mental control within normal limits; she performed within normal limits

14 on Trail-making testing, parts A and B); Tr. 352, 423, 429, 433, 437, 449, 469-70,

15 474, 477, 482, 485, 488, 491, 497, 510, 520, 526, 535, 544 (Plaintiff consistently

16 presented unremarkably with a cooperative and attentive demeanor, normal

17 thought process and no apparent difficulty understanding or remembering; she

18 appeared friendly and relaxed; she remained capable of engaging and cooperating

19 with providers and evaluators; Plaintiff consistently presented with intact attention

20 and concentration during the course of treatment and upon testing).  Additionally,

ORDER - 15

the ALJ considered and gave "greater weight" to the medical opinion of Collette Valette, Ph.D., who testified that Plaintiff's mental impairments were not severe. Tr. 22; *see* Tr. 36. The ALJ reasonably concluded that the medical evidence showed Plaintiff did not have mental impairments that significantly limited her ability to perform basic work activities. Tr. 20-24.

Plaintiff offers evidence that she contends shows her mental health impairments are severe. ECF No. 14 at 17. Plaintiff generally asserts that the counseling records, treatment records, and the findings of Plaintiff's two examining doctors indicate that she has a severe impairment with significant mental limitations. ECF No. 14 at 17. However, Plaintiff makes no argument about how these records undermine the ALJ's conclusion that her impairments were not severe. ECF No. 14 at 17. Moreover, as discussed *infra*, the ALJ properly discredited the opinions of the examining physicians, thus, the ALJ was not required to credit those opinions in assessing the severity of her impairments. The Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, in Plaintiff's Reply brief, she contends that the medical records show she has been diagnosed with pelvic pain, Tr. 510, a ventral wall hernia, Tr. 523-28, major depressive disorder, and generalized anxiety disorder with insomnia, Tr. 370-72, and that her tremor was observed by a

ORDER - 16

provider, Tr. 545.  ECF No. 16 at 2.  However, the "mere diagnosis of an impairment … is not sufficient to sustain a finding of disability."  *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).  Plaintiff has identified no evidence indicating that these conditions more than minimally impact her ability to perform basic work activities.  A mere recitation of medical diagnoses does not demonstrate how each of the conditions impacts Plaintiff's ability to engage in basic work activities.  The evidence Plaintiff offers does not undermine the substantial evidence supporting the ALJ's conclusion.

Alternatively, the ALJ determined that even if he were to find Plaintiff's mental health impairments to be severe and assign functional limitations as outlined in his hypothetical to the vocational expert during the hearing, Plaintiff would still not be disabled.  Tr. 24.  The ALJ found that if he were to formulate an RFC limiting Plaintiff to simple, routine tasks with a reasoning level of two or less and the need for a routine, predictable work environment with no more than occasional changes, as well as only occasional, superficial contact with the public, supervisors, and coworkers, no work at an assembly line pace or other fast-paced work, and no multitasking, Plaintiff could still perform other work that existed in significant numbers in the national economy.  Tr. 24, 58.  In response to a hypothetical with these limitations, the vocational expert testified that Plaintiff would be capable of performing the jobs of hand packager, janitor, and marker.

ORDER - 17

Tr. 24, 58.  The ALJ noted in his decision that even if he were to find Plaintiff more limited, as outlined in his hypothetical to the vocational expert, Plaintiff would still not be disabled.  Tr. 24.  Therefore, any error in the ALJ's finding that Plaintiff had no severe impairments would be harmless.

**B.    Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting her symptom claims.  ECF No. 14 at 12-14.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  Social Security Ruling (SSR) 16–3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

omitted).  General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th 1996); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)).  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c).  The ALJ is instructed to "consider all of the evidence in

1    an individual's record," to "determine how symptoms limit ability to perform

2    work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

3         The ALJ found that Plaintiff's medically determinable impairments could

4    reasonably be expected to produce some of the alleged symptoms, but that

5    Plaintiff's statements concerning the intensity, persistence, and limiting effects of

6    her symptoms were not entirely consistent with the evidence.  Tr. 20.

7         *1. Not Supported by Objective Medical Evidence*

8         The ALJ found that Plaintiff's physical and mental symptom complaints

9    were not supported by the objective medical evidence.  Tr. 20-21.  An ALJ may

10   not discredit a claimant's symptom testimony and deny benefits solely because the

11   degree of the symptoms alleged is not supported by the objective medical

12   evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v.*

13   *Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991).  However, the objective medical

14   evidence is a relevant factor, along with the medical source's information about the

15   claimant's pain or other symptoms, in determining the severity of a claimant's

16   symptoms and their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§

17   404.1529(c)(2), 416.929(c)(2).

18        Here, the ALJ discussed Plaintiff's alleged symptoms related to anxiety,

19   depression, and paranoia that she claimed caused her to be unable to work.  Tr. 19.

20   The ALJ cited Plaintiff's reports that her impairments limited her ability to leave

ORDER - 20

her home and caused difficulty talking with patients at work, having little to no patience, and needing to leave work. Tr. 19, 42. The ALJ also cited Plaintiff's testimony that her anxiety caused chest tightness, difficulty breathing, and a lot of sweating which would automatically turn into a panic attack resulting in her need to retreat to her bedroom. Tr. 19, 43. The ALJ highlighted Plaintiff's claim that she was in her room "24/7". Tr. 19, 43. The ALJ referenced Plaintiff's testimony that her panic attacks occurred once or twice a day and lasted about 15 minutes, which was followed by anxiety for the rest of the day whether she was at home or not. Tr. 19, 44. The ALJ observed that Plaintiff alleged she would hide in her closet as a result of her anxiety. Tr. 19, 44. The ALJ cited Plaintiff's testimony that due to depression, she was unable to get out of bed, she slept all the time, was socially isolated and forgetful, and was sometimes afraid to go to sleep because of nightmares. Tr. 19, 45. The ALJ also indicated that Plaintiff stated she thought a lot about suicide. Tr. 19, 45. The ALJ noted that Plaintiff testified she was able to walk about half a block and stand for about five minutes before her lower back began to hurt, she would need to adjust while seated, and she could lift and carry no more than 16 pounds. Tr. 20, 50-51.

However, the ALJ found that Plaintiff's mental health impairments caused no more than mild restrictions on her ability to perform basic work activities as her mental status examinations showed signs of little to no functional impact. Tr. 20-

ORDER - 21

21; *see, e.g.,* Tr. 419 (December 30, 2015: Plaintiff's affect was noted to be a "bit constricted", but she was otherwise doing well with maintaining sobriety and going to meetings); Tr. 421 (March 3, 2016: Plaintiff indicated she had been doing well and feeling well for the first time in years); Tr. 423, 429, 433, 437 (March 3, 2016, May 12, 2016, July 29, 2016, November 3, 2016: over the course of treatment in 2016, Plaintiff consistently presented as alert and cooperative with a normal mood and affect; she had a consistently normal attention span and concentration); Tr. 510, 520, 526, 535, 544 (February 21, 2017, June 22, 2017, July 7, 2017, September 15, 2017, December 19, 2017: Plaintiff's presentation remained consistently unremarkable); Tr. 351-52, 449, 469-70, 474, 477, 482, 485, 488, 491 (April 15, 2016, June 28, 2016, January 3, 2017, March 9, 2017, April 18, 2017, May 16, 2017, July 12, 2017, September 7, 2017: Plaintiff consistently appeared cooperative with good eye contact and she was attentive; overall her mood and affect were euthymic and normal; while at times there was mention of anxiety or lability, Plaintiff remained attentive with logical thinking and no gross behavioral abnormalities; she demonstrated intact memory, both short and long-term, and intact concentration and attention); Tr. 505 (January 19, 2018: a mental status examination indicated normal cognitive function); Tr. 444-45 (February 19, 2017: Plaintiff had an overall unremarkable consultative mental evaluation; she demonstrated "adequate" concentration, persistence, and pace for the examination;

ORDER - 22

she was cooperative throughout the interview, she made good eye contact, she did not exhibit any abnormal motor activities, her speech was of normal rate, rhythm, and tone, her conversation was normal, she did not exhibit any loose associations, tangential, circumstantial thinking or confusion, she did not exhibit any delusions, distortions, preoccupations, or suicidal ideation, her affect appeared but "mildly" restricted and flat); Tr. 500-01 (October 9, 2017: during a mental evaluation, Plaintiff obtained 29 out of 30 points on a mini-mental status examination, and thus, performed above the cutoff of 24 reflecting impairment; she had difficulty with serial sevens, but could spell "world" forward and backward; she recalled two out of three objects on a short delay memory task; she followed a simple command; she exhibited mental control within normal limits; this was further evident on Trail-making testing, parts A and B, during which she performed within normal limits); Tr. 352, 423, 429, 433, 437, 449, 469-70, 474, 477, 482, 485, 488, 491, 497, 510, 520, 526, 535, 544 (Plaintiff consistently presented unremarkably with a cooperative and attentive demeanor, normal thought process and no apparent difficulty understanding or remembering; she appeared friendly and relaxed; she remained capable of engaging and cooperating with providers and evaluators; Plaintiff consistently presented with intact attention and concentration during the course of treatment and upon testing).

1       As to physical complaints, the ALJ determined that Plaintiff's physical

2 examinations were largely unremarkable.  Tr. 20; *see, e.g.,* Tr. 423, 428, 432, 519

3 (the medical evidence of record established only mild obesity, as Plaintiff had a

4 body mass index just over 30); Tr. 525-27, 534-35, 544 (the functional impact of

5 Plaintiff's obesity was not apparent on examination even when considered with

6 other impairments, such as the brief mention of mild resting tremor, ventral hernia,

7 and anemia); Tr. 429 (May 12, 2016: upon physical examination Plaintiff had no

8 neurologic deficits, and normal sensation, reflexes, coordination, muscle strength,

9 and muscle tone); Tr. 535-36 (September 15, 2017: despite mention of

10 polyarthralgia, Plaintiff had a stable gait); Tr. 544 (December 19, 2017: treatment

11 notes indicated a resting and intention tremor to the upper and lower extremities,

12 greater in the upper extremities; however, upon physical examination Plaintiff

13 remained capable of carrying out requested functions; she had a stable gait); Tr.

14 561 (March 2, 2018: during an emergent care visit Plaintiff had no gross motor

15 deficits, she had normal strength and reflexes, and no decreased sensation).

16 Additionally, the ALJ considered and gave great weight to the medical opinion of

17 J.D. Fitterer, M.D., who opined that Plaintiff's physical impairments were not

18 severe.  Tr. 20; *see* Tr. 81.  The ALJ reasonably concluded that this evidence

19 showed Plaintiff's physical impairments had been "at most transient and mild, and

20 thus non-severe."  Tr. 20, 24.

ORDER - 24

Plaintiff disagrees with the ALJ's findings, and argues that the ALJ improperly discounted her symptom allegations based on a report from reviewing physician John Robinson, Ph.D. and assigned the greatest weight to the testifying medical expert.  ECF No. 14 at 12 (citing Tr. 18).  In her Reply brief, Plaintiff argues that the ALJ "pick[ed] out a few isolated incidents of improvement" to show that Plaintiff was capable of working.  ECF No. 16 at 6-7.  In her Reply brief, Plaintiff also cites treatment notes to show that her mental impairments were severe.  ECF No. 16 at 6; *see, e.g.,* Tr. 449 (June 28, 2016: Plaintiff's counselor at Children's Home Society observed there were signs of anxiety and her judgment and her insight were fair; Plaintiff was diagnosed with PTSD and anxiety disorder); Tr. 477 (January 3, 2017: Plaintiff had only partial insight); Tr. 474 (January 4, 2017: Plaintiff was noted to have increased rate of speech, anxious mood, and partial insight; she was diagnosed with PTSD, primary); Tr. 470 (March 9, 2017: Plaintiff had an anxious mood and partial insight); Tr. 491 (April 18, 2017: Plaintiff was observed to have an anxious mood and partial insight); Tr. 488 (May 16, 2017: Plaintiff's affect was noted to be stressed, regretful, and anxious; she had an anxious mood and partial insight); Tr. 485-86 (July 12, 2017: Plaintiff had an anxious mood and partial insight); Tr. 482 (September 7, 2017: Plaintiff was observed to have an anxious mood and partial insight; it was noted that she had a passive suicidal intention without a plan); Tr. 546-47 (September 12, 2017:

1    Plaintiff's counselor noted that Plaintiff reported mood swings and anxiety).  It is

2    the ALJ's responsibility to resolve conflicts in the medical evidence.  *Andrews v.*

3    *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Where the ALJ's interpretation of the

4    record is reasonable as it is here, it should not be second-guessed.  *Rollins*, 261

5    F.3d at 857.  The Court must consider the ALJ's decision in the context of "the

6    entire record as a whole," and if the "evidence is susceptible to more than one

7    rational interpretation, the ALJ's decision should be upheld."  *Ryan v. Comm'r of*

8    *Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted).

9    Here, the ALJ reasonably concluded, based on this record, that the objective

10   medical evidence did not support the level of physical or mental impairment

11   alleged by Plaintiff.  Tr. 20-21.  The ALJ's finding was supported by substantial

12   evidence and was a clear and convincing reason, in conjunction with inconsistency

13   with activities and minimal mental health treatment, *see infra*, to discount

14   Plaintiff's symptom complaints.

15        *2.  Inconsistent with Activities*

16        The ALJ found that Plaintiff's activities were inconsistent with the level of

17   mental health impairment Plaintiff alleged.  Tr. 21.  An ALJ may consider a

18   claimant's activities that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.

19   If a claimant can spend a substantial part of the day engaged in pursuits involving

20   the performance of exertional or nonexertional functions, the ALJ may find these

1    activities inconsistent with the reported disabling symptoms.  *Fair v. Bowen*, 885

2    F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113.  "While a claimant need

3    not vegetate in a dark room in order to be eligible for benefits, the ALJ may

4    discount a claimant's symptom claims when the claimant reports participation in

5    everyday activities indicating capacities that are transferable to a work setting" or

6    when activities "contradict claims of a totally debilitating impairment."  *Molina*,

7    674 F.3d at 1112-13.

8         Here, the ALJ indicated that Plaintiff reported she was unable to work due to

9    mental health impairments that caused extreme limitations, including bathing once

10   or twice a week and brushing her teeth once or twice a week because of low

11   motivation, difficulty getting out of bed and leaving her home, and panic attacks

12   that resulted in a need to retreat to her bedroom.  Tr. 19, 21, 444.  The ALJ

13   highlighted Plaintiff's claim that she was in her room "24/7".  Tr. 19.  The ALJ

14   observed that Plaintiff testified her panic attacks occurred once or twice a day and

15   lasted about 15 minutes, and then she had anxiety for the rest of the day whether

16   she was home or not.  Tr. 19.  The ALJ also observed that Plaintiff alleged she

17   would hide in her closet as a result of her anxiety, and she testified that because of

18   her depression she was unable to get out of bed, slept all the time, was socially

19   isolated, was forgetful, and was sometimes afraid to go to sleep because of

20   nightmares.  Tr. 19.  The ALJ indicated that Plaintiff stated she thought a lot about

ORDER - 27

1  suicide.  Tr. 19.  However, the ALJ noted that Plaintiff engaged in activities that

2  suggested no more than mild severity in her impairments.  Tr. 21.  For example,

3  the ALJ cited Plaintiff's report from February 2017 that she bathed and brushed

4  her teeth once or twice a week due to low motivation.  Tr. 21 (citing Tr. 444).  But

5  the ALJ observed that in October 2017, Plaintiff disclosed improved attendance to

6  self-care with more frequent bathing and no problems with hygiene.  Tr. 21 (citing

7  Tr. 500).  Further, the ALJ noted that throughout the period at issue Plaintiff was

8  able to drive, prepare meals, grocery shop in stores, and do household chores such

9  as laundry and vacuuming.  Tr 21 (citing Tr. 269-72, 331-33, 444, 500).  The ALJ

10 noted that, contrary to Plaintiff's testimony about difficulty getting out of bed and

11 leaving her home, she reported involvement in activities such as caring for her two

12 dogs, including taking them on walks, and going to therapy or to the library on a

13 typical day.  Tr. 21- 22 (citing Tr. 444, 500).  The ALJ reasonably concluded that

14 these activities were inconsistent with the debilitating level of mental impairment

15 Plaintiff alleged.  Tr. 21-22.

16      Plaintiff challenges the ALJ's finding by asserting that consultative

17 psychiatrist, Amy Dowell, M.D., and examining psychologist, Kayleen Islam-

18 Zwart, Ph.D., "would have taken into consideration that [Plaintiff] is capable of

19 some activities of daily living" and "would have factored this into their diagnosis

20 and opinion about her diagnosis and mental limitations."  ECF No. 14 at 14.  As

discussed *infra*, the ALJ properly discredited the opinions of Drs. Dowell and Islam-Zwart. Tr. 22. An ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities that "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13. Here, the ALJ identified Plaintiff's specific alleged impairments and noted specific activities that indicated Plaintiff was less limited than she alleged. Tr. 21-22. This was a clear and convincing reason to give less weight to Plaintiff's subjective symptom testimony.

### 3. Minimal Mental Health Treatment

The ALJ found that Plaintiff's minimal mental health treatment further indicated that her mental health impairments did not cause disabling limitations in her functioning. Tr. 22. An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating a claimant's subjective symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom reports. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v. Astrue*, 312 Fed. App'x 45, *2 (9th Cir. 2009) (unpublished opinion) (considering why plaintiff was not seeking treatment). When there is no evidence suggesting that the failure to seek or participate in

ORDER - 29

1    treatment is attributable to a mental impairment rather than a personal preference,

2    it is reasonable for the ALJ to conclude that the level or frequency of treatment is

3    inconsistent with the alleged severity of complaints. *Molina*, 674 F.3d at 1113-14.

4    But when the evidence suggests lack of mental health treatment is partly due to a

5    claimant's mental health condition, it may be inappropriate to consider a

6    claimant's lack of mental health treatment when evaluating the claimant's failure

7    to participate in treatment. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

8         The ALJ determined that Plaintiff's lack of significant mental health

9    counseling, despite her access to counseling, suggested her mental health

10   symptoms were not as severe as alleged.  Tr. 22.  The ALJ noted Plaintiff reported

11   that she was unable to work due to anxiety, depression, and paranoia, and her

12   mental impairments limited her ability to leave her home and caused her to be in

13   her bedroom "24/7".  Tr. 19, 42-46, 63-64, 76.  The ALJ observed that Plaintiff

14   testified her panic attacks occurred once or twice a day and lasted about 15

15   minutes, which was followed by anxiety for the rest of the day whether she was at

16   home or not, and she claimed she would hide in her closet as a result of her

17   anxiety.  Tr. 19, 43-44.  The ALJ cited Plaintiff's testimony that due to depression,

18   she was unable to get out of bed, she slept all the time, was socially isolated and

19   forgetful, was sometimes afraid to go to sleep because of nightmares, and she

20   thought a lot about suicide.  Tr. 19, 45.  However, the ALJ noted that despite

ORDER - 30

Plaintiff's access to counseling, she received relatively little treatment with routine medication management and no significant mental health counseling.  Tr. 22. Further, there is no evidence to suggest that Plaintiff's failure to seek more treatment was attributable to her mental health impairment.  The ALJ reasonably relied on this evidence in evaluating Plaintiff's symptom claims.

Plaintiff argues that she has undergone significant psychological treatment and counseling.  ECF No. 16 at 5; *see, e.g.,* Tr. 426, 433-434, 527 (Plaintiff was prescribed Clonidine, Vistaril, and Cymbalta for her psychological symptoms); Tr. 551-554 (treatment records indicate Plaintiff had six counseling sessions at Children's Home Society); Tr. 468-78, 481-92 (treatment records indicate that Plaintiff received seven more counseling sessions at Frontier Behavioral Health from January 3, 2017 to October 31, 2017).  The Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record. *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision).  The ALJ reasonably concluded that Plaintiff's minimal treatment indicated that Plaintiff's impairments were not as severe as alleged.  Tr. 22.  This was a clear and convincing reason to discredit Plaintiff's symptom testimony.

//

//

ORDER - 31

1    *4. Situational Stressors*

2        The ALJ found that at one point in the record recent suicidal ideation was

3    noted, but found that these notations came in the context of situational stressors.

4    Tr. 21.  An ALJ may reasonably find a claimant's symptom testimony less credible

5    where the evidence "squarely support[s]" a finding that the claimant's impairments

6    are attributable to situational stressors rather than impairments.  *Wright v. Colvin*,

7    No. 13-CV-3068-TOR, 2014 WL 3729142, at *5 (E.D. Wash. July 25, 2014)

8    ("Plaintiff testified that she would likely be able to maintain full-time employment

9    but for the 'overwhelming' stress caused by caring for her family members").

10   However, "because mental health conditions may presumably *cause* strained

11   personal relations or other life stressors, the Court is not inclined to opine that one

12   has caused the other based only on the fact that they occur simultaneously."

13   *Brendan J. G. v. Comm'r, Soc. Sec. Admin.*, No. 6:17-CV-742-SI, 2018 WL

14   3090200, at *7 (D. Or. June 20, 2018) (emphasis in original).

15       The ALJ identified issues with Plaintiff's living situation and unemployment

16   as situational stressors.  Tr. 21; *see, e.g.,* Tr. 491 (April 18, 2017: Plaintiff reported

17   a passive suicidal ideation without plan or intent; treatment notes indicated suicidal

18   ideation two weeks ago, on and off all her life, but observed she had many

19   stressors including living with her mother and joblessness); Tr. 482 (September 7,

20   2017: Plaintiff reported a passive suicidal ideation without plan or intent; treatment

notes indicated suicidal ideation six weeks ago, on and off all her life, but observed she had many stressors including living with her mother and joblessness).  The ALJ observed that Plaintiff's suicidal ideation "appeared short-lived" as other reports revealed little to no mention of suicidal ideation.  Tr. 21; *see, e.g.,* Tr. 448-55 (June 28, 2016: an intake assessment from Children's Home Society noted "past and current suicidal ideation); Tr. 477 (January 3, 2017: Plaintiff reported no suicidal ideation); Tr. 474 (January 4, 2017: Plaintiff reported no suicidal ideation); Tr. 470 (March 9, 2017: Plaintiff reported no suicidal ideation); Tr. 505 (January 19, 2018: Plaintiff reported no suicidal ideation).  Plaintiff's stressors from unemployment and her housing situation are not clearly separable from Plaintiff's mental impairments.  Unlike prior cases in this district, where the record clearly contained evidence that the claimant would have been capable of working but for the presence of a specific situational stressor, here Plaintiff's impairments and situational stressors are more complex and intertwined.  *See Wright*, 2014 WL 3729142, at *5.  This finding is not supported by substantial evidence.  However, this error is harmless because the ALJ identified other specific, clear, and convincing reasons to discount Plaintiff's symptom claims.  *See Carmickle*, 533 F.3d at 1162-63; *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons

for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record.").

## C.    Medical Opinion Evidence

As an initial matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity

with the other evidence in the claim or an understanding of our disability

program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-

(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore

the ALJ is required to explain how both factors were considered. 20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2). Supportability and consistency are explained in

the regulations:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The ALJ may, but is not

required to, explain how the other factors were considered. 20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2). However, when two or more medical opinions

or prior administrative findings "about the same issue are both equally well-

supported ... and consistent with the record ... but are not exactly the same," the

ALJ is required to explain how "the other most persuasive factors" were

considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

ORDER - 35

1       Here, Plaintiff applied for Title II disability insurance benefits on November

2 17, 2016, Tr. 202-03, which would make the old regulations applicable to

3 Plaintiff's Title II claim.[6]  20 C.F.R. § 404.1520c.  However, she applied for Title

4 XVI supplemental security income benefits on January 5, 2018, Tr. 219-34, which

5 would make the new regulations applicable to Plaintiff's Title XVI claim.  20

6 C.F.R. § 416.920c.  Under the new regulations, the ALJ would be required to

7 "articulate how [he/she] considered the medical opinions" and "how persuasive

8 [he/she] find[s] all of the medical opinions."  20 C.F.R. §§ 404.1520c(a) and (b),

9 416.920c(a) and (b).  Further, the ALJ would be required to "explain how [he/she]

10 considered the supportability and consistency factors" for a medical opinion.  20

11 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Despite Plaintiff's claims being filed

12 both before and after March 27, 2017, the ALJ appears to have only applied the old

13 regulations in evaluating the medical opinion evidence.  Tr. 20, 22-23.  Neither the

14 ALJ, nor the parties, made any mention of the new regulations or the differing

15 standards used to assess the medical opinion evidence.

16

17 _____

18 [6] The new regulations state that "[f]or claims filed … on or after March 27, 2017,

19 the rules in this section apply.  For claims filed before March 27, 2017, the rules in

20 [§ 404.1527 or § 416.927] apply."  20 C.F.R. §§ 404.1520c, 416.920c.

1    On May 4, 2020, the Court ordered the parties to address the impact of the

2    new regulations on Plaintiff's claims.  ECF No. 17.  In Plaintiff's supplemental

3    brief, she cites the SSA Program Operations Manual System (POMS) DI

4    24503.050, (Appendix A), noting that although the POMS does not have the force

5    of law, it does provide guidelines for ALJs to evaluate cases.  ECF No. 18 at 2.

6    Plaintiff asserts that POMS DI 24503.050 advises ALJs to adjudicate claims filed

7    before March 27, 2017 using the rules in effect prior to March 27, 2017, and to

8    adjudicate claims filed after March 27, 2017 using the current rules.  *Id*.  Plaintiff

9    contends that the ALJ correctly evaluated her Title II claim under the regulations in

10   effect prior to March 27, 2017, but incorrectly decided her Title XVI claim under

11   the previous rules.  ECF No. 18 at 3.  Plaintiff argues that this case should be

12   remanded and the ALJ must be directed to reevaluate Plaintiff's Title XVI claim

13   under the new regulations.  *Id*.  Further, Plaintiff asserts that on remand, the ALJ

14   should be directed to conduct an additional evidentiary hearing to determine if

15   Plaintiff was disabled under her Title XVI claim based on the regulations that went

16   into effect on March 27, 2017.  *Id*.

17   Defendant disagrees and asserts that the ALJ correctly decided this matter

18   under the old regulations.  ECF No. 19 at 3.  Defendant notes that although the

19   regulations do not address the situation in which there are concurrent claims with

20   application dates straddling March 27, 2017, the POMS "clearly provides that in

1   such circumstances the ALJ is to apply the regulations applicable to the earlier

2   application." ECF No. 19 at 2. Defendant asserts that the POMS specifically

3   discusses the situation in which there are multiple claims and one claim is open

4   when another claim is filed. ECF No. 19 at 3-4 (citing POMS DI 24503.050D.2.a).

5   Defendant states that the POMS includes an instruction that when faced with this

6   situation, the second claim should be accelerated to the same level as the first

7   claim.[7] ECF No. 19 at 4. Defendant asserts that the POMS unambiguously

8   instructs that in this situation, "If the earliest filing date of the claim[s] is: Before

9   March 27, 2017, use the prior rules." *Id*. (citing POMS DI 24503.050D.2.a.) Like

10  Plaintiff, Defendant acknowledges that "[t]he POMS does not have the force of

11  law, but it is persuasive authority." *Id*. (citing *Warre ex rel. E.T. IV v. Comm'r of*

12  *Soc. Sec. Admin*., 439 F.3d 1001, 1005 (9th Cir. 2006)). Defendant argues that the

13  ALJ's actions are in accord with the POMS and because the ALJ applied the

14  correct regulations, the Court should reach the merits of Plaintiff's challenges.

15  ECF No. 19 at 4-5. Defendant also asserts that Plaintiff has waived any challenge

16

17  _____

18  [7] POMS DI 24503.050D.2.a states, "If the first claim has been appealed when the

19  second claim is filed, consolidate and escalate the second claim to the same level

20  of appeal." POMS DI 24503.050D2a.

ORDER - 38

1 | to this issue as she failed to raise this issue in her opening or reply briefs. ECF No.

2 | 19 at 5-6 (citing ECF No. 17 at 5); *see also* ECF No. 14, 16.

3 |      In her Reply brief, Plaintiff takes issue with Defendant's reliance upon the

4 | POMS instruction, "If the earliest filing date of *the claims* is: Before March 27,

5 | 2017, use the prior rules," and argues that if the POMS was referring to both

6 | claims, then the wording would state that both claims filed before and after March

7 | 27, 2017 should be adjudicated under the old law. ECF No. 20 at 1-2. Further,

8 | Plaintiff argues that while the POMS does not have the force of law, the

9 | regulations that went into effect on March 27, 2017 do have the force of law and

10 | the regulations clearly state that claims filed after March 27, 2017 should be

11 | adjudicated based upon the new law. *Id*. (citing 20 CFR §§ 404.1520c, 416.920c).

12 | Plaintiff contends that her case should be remanded to the ALJ to evaluate her Title

13 | XVI claim pursuant to the new regulations that went into effect on March 27,

14 | 2017. *Id*. at 3.

15 |      This Court finds the guidance in the POMS DI 24503.050D.2.a to be

16 | instructive in this case. The Court recognizes that the POMS does not have the

17 | force of the law. However, the regulations are silent as to how to proceed when a

18 | claimant has filed one claim prior to the implementation of the new regulations and

19 | one claim after the implementation of the new regulations. As noted by Defendant,

20 | the POMS addresses this specific situation. POMS DI 24503.050D.2.a. The Court

will look to the guidance presented in the POMS, as it is persuasive authority.  *See*

*Warre ex rel. E.T. IV*, 439 F.3d at 1005.  Following the instruction set forth in the

POMS, the Court finds no error in the ALJ's evaluation of the medical opinion

evidence under the old regulations.  The Court's discussion below will be based on

the regulations that were in effect prior to March 27, 2017.

Plaintiff challenges the ALJ's evaluation of the medical opinions of Collette

Valette, Ph.D., Amy Dowell, M.D., and Kayleen Islam-Zwart, Ph.D.  ECF No. 14

at 14-16.

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."

*Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

Generally, a treating physician's opinion carries more weight than an examining

physician's opinion, and an examining physician's opinion carries more weight

than a reviewing physician's opinion.  *Id.* at 1202.  "In addition, the regulations

give more weight to opinions that are explained than to those that are not, and to

the opinions of specialists concerning matters relating to their specialty over that of

nonspecialists."  *Id.* (citations omitted).

ORDER - 40

1    If a treating or examining physician's opinion is uncontradicted, the ALJ

2  may reject it only by offering "clear and convincing reasons that are supported by

3  substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

4  "However, the ALJ need not accept the opinion of any physician, including a

5  treating physician, if that opinion is brief, conclusory, and inadequately supported

6  by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

7  (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or

8  examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

9  may only reject it by providing specific and legitimate reasons that are supported

10  by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830–

11  31. The opinion of a nonexamining physician may serve as substantial evidence if

12  it is supported by other independent evidence in the record. *Andrews*, 53 F.3d at

13  1041.

14    *1. Dr. Valette*

15    Collette Valette, Ph.D., a clinical psychologist, reviewed the medical record

16  and testified at the administrative hearing. Tr. 34-40. Dr. Valette opined that

17  Plaintiff did not have a severe mental impairment. Tr. 36. She opined that

18  Plaintiff did not have any limitations in her ability to understand, remember, or

19  apply information, interact with others, concentrate, persist, or maintain pace, or

20

1    adapt and manage herself.  Tr. 35-36.  The ALJ gave Dr. Valette's opinion

2    "greater" weight.  Tr. 22.

3         Plaintiff contends the ALJ erred by giving greater weight to Dr. Valette, a

4    nonexamining psychologist, and little weight to examining doctors, Drs. Dowell

5    and Islam-Zwart.  ECF No. 14 at 14-16; *see* Tr 22.  An ALJ may credit the opinion

6    of a nonexamining expert who testifies at the hearing and is subject to cross-

7    examination.  *See Andrews*, 53 F.3d at 1042 (citing *Torres v. Sec'y of H.H.S.,* 870

8    F.2d 742, 744 (1st Cir. 1989)).  The opinion of a nonexamining physician may

9    serve as substantial evidence if it is supported by other evidence in the record and

10   is consistent with it.  *Andrews*, 53 F.3d at 1041.  Other cases have upheld the

11   rejection of an examining or treating physician based in part on the testimony of a

12   nonexamining medical advisor when other reasons to reject the opinions of

13   examining and treating physicians exist independent of the nonexamining doctor's

14   opinion.  *Lester*, 81 F.3d at 831 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751-

15   55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from

16   examining physicians and testimony from claimant that conflicted with treating

17   physician's opinion)); *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995)

18   (rejection of examining psychologist's functional assessment which conflicted with

19   his own written report and test results).  Thus, case law requires not only an

20   opinion from the consulting physician but also substantial evidence (more than a

ORDER - 42

1 mere scintilla but less than a preponderance), independent of that opinion which

2 supports the rejection of contrary conclusions by examining or treating physicians.

3 *Andrews*, 53 F.3d at 1039.

4      Here, the ALJ found that Dr. Valette reviewed the longitudinal record and

5 noted that she relied on the most expansive review of the record.  Tr. 22.

6 Furthermore, the ALJ found that Dr. Valette's opinions were supported by the

7 record as a whole.  Tr. 22; *see, e.g.*, Tr. 352, 423, 429, 433, 437, 449, 469-70, 474,

8 477, 482, 485, 488, 491, 497, 510, 520, 526, 535, 544 (Plaintiff consistently

9 presented unremarkably with a cooperative and attentive demeanor).  The ALJ

10 reasonably concluded that Dr. Valette's opinions were supported by evidence in

11 the record.

12      Plaintiff suggests that the ALJ should have credited the opinions of Drs.

13 Dowell and Islam-Zwart over Dr. Valette's opinions.  ECF No. 14 at 14-16.

14 However, as discussed *supra* and *infra*, the ALJ provided legally sufficient reasons

15 for giving less weight to the medical source opinions of Drs. Dowell and Islam-

16 Zwart and for giving more weight to Dr. Valette's opinions.

17     *2.  Dr. Dowell*

18      On February 19, 2017, Dr. Dowell examined Plaintiff and completed a

19 psychological assessment report.  Tr. 442-47.  Dr. Dowell diagnosed Plaintiff with

20 opioid use disorder in sustained remission, PTSD, and borderline personality

ORDER - 43

disorder. Tr. 445. She opined that as long as Plaintiff continued in treatment she should continue to remain in remission and her opioid use disorder should not functionally impair her ability to work. *Id*. Dr. Dowell opined that with optimal treatment Plaintiff would likely see improvement with her PTSD within the next 12 months, but she also opined that Plaintiff's PTSD would cause some difficulty dealing with stress in the job and she may need some additional help and attention on the job. *Id*. Dr. Dowell also found that while Plaintiff's borderline personality disorder "likely at times causes difficulties in her social relationships, I do not believe that it would significantly impair her ability to hold a job." Tr. 446. Dr. Dowell determined that Plaintiff would not have difficulty performing simple and repetitive tasks, detailed and complex tasks, accepting instructions from supervisors, or interacting with coworkers and the public. Tr. 446. Further, Dr. Dowell opined that Plaintiff would not have difficulty maintaining regular attendance in the workplace or completing a normal workday or workweek without interruptions from a psychiatric condition. Tr. 446-47. Dr. Dowell found that Plaintiff would have difficulty performing work activities on a consistent basis without special or additional instruction. Tr. 446. She opined that due to her mental health disorders, Plaintiff becomes overwhelmed in a job and reports making mistakes at times which have caused impairment in her functioning. Tr. 446. Dr. Dowell noted that Plaintiff exhibited difficulties in memory, fund of

1  knowledge, and calculations on her mental status examination and Dr. Dowell

2  believed Plaintiff would benefit from additional help or special instructions on the

3  job.  Tr. 446.  Finally, Dr. Dowell opined that Plaintiff would have difficulty

4  dealing with the usual stress encountered in a workplace due to her PTSD.  Tr.

5  447.

6       The ALJ gave little weight to Dr. Dowell's opinion.  Tr. 22.  Because Dr.

7  Dowell's opinion was contradicted by nonexamining psychologist Dr. Valette, Tr.

8  34-40, the ALJ was required to provide specific and legitimate reasons for

9  rejecting Dr. Dowell's opinion.  *Bayliss*, 427 F.3d at 1216.

10          a.     Internally Inconsistent

11      The ALJ found that Dr. Dowell's opined limitations in dealing with job-

12  related stress and performing work activities on a consistent basis without special

13  or additional instruction were internally inconsistent with Dr. Dowell's own

14  contemporaneous observations and testing.  Tr. 22 (citing Tr. 442-47).  Relevant

15  factors to evaluating any medical opinion include the amount of relevant evidence

16  that supports the opinion, the quality of the explanation provided in the opinion,

17  and the consistency of the medical opinion with the record as a whole.

18  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007); *Orn*, 495 F.3d at 631.

19  Moreover, a physician's opinion may be rejected if it is unsupported by the

20  physician's treatment notes.  *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir.

2003).  Here, the ALJ found there was no mention of inattention or diminished persistence in Plaintiff's evaluation.  Tr. 22.  Further, the ALJ noted that Plaintiff did not show signs of difficulty engaging or following commands when examined by Dr. Dowell, and instead Plaintiff remained cooperative and capable of completing tasks and performed within normal limits.  Tr. 22 (citing Tr. 444-45).  The ALJ reasonably concluded that these findings were inconsistent with Dr. Dowell's opined limitations.

Plaintiff argues that the ALJ's "justification for ignoring the opinion of the treating counselors and examining doctors was due to quoting some of [Plaintiff's] daily activities and quoting some of the normal findings found in [Plaintiff's] treatment records."  ECF No. 14 at 16.  Plaintiff asserts that her mental health symptoms varied and fluctuated over time.  ECF No. 14 at 14.  She contends that Dr. Dowell would have considered both the normal and abnormal findings on examination when arriving at her diagnoses and opinion as to Plaintiff's mental limitations and inability to work.  ECF No. 14 at 16.  As discussed *supra*, Plaintiff's mental health impairments and Dr. Dowell's contemporaneous observations and testing during the evaluation do not support the opined limitations.  To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999).  Where, as

ORDER - 46

1 here, evidence is subject to more than one rational interpretation, the ALJ's

2 conclusion will be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005);

3 *Hill*, 698 F.3d at 1158 (recognizing the court only disturbs the ALJ's findings if

4 they are not supported by substantial evidence). The ALJ provided a specific and

5 legitimate reason to discount Dr. Dowell's opined limitations in dealing with job-

6 related stress and performing work activities on a consistent basis without special

7 or additional instruction.

8          b.      Inconsistent with Activities

9          The ALJ also determined that Plaintiff's routine activities were inconsistent

10 with Dr. Dowell's opined limitations in dealing with job-related stress and

11 performing work activities on a consistent basis without special or additional

12 instruction. Tr. 22. An ALJ may discount a medical source opinion to the extent it

13 conflicts with the claimant's daily activities. *Morgan*, 169 F.3d at 601. Here, the

14 ALJ concluded Plaintiff's ability to engage in activities such as driving where

15 needed, grocery shopping when needed, going to the library, and walking her two

16 dogs routinely, were inconsistent with Dr. Dowell's opined limitations in dealing

17 with job-related stress and performing work activities on a consistent basis without

18 special or additional instruction. Tr. 22 (citing Tr. 444, 500).

19         On this record, the activities cited by the ALJ as inconsistent with Dr.

20 Dowell's opinions do not constitute a legitimate reason to discount Dr. Dowell's

opinions.  The ALJ does not attempt to explain how Plaintiff's ability to drive, grocery shop, go to the library, and walk her dogs is inconsistent with the opinion that Plaintiff is limited in her ability to deal with job-related stress or to perform work activities on a consistent basis without special supervision or instruction. However, any error by the ALJ in relying on Plaintiff's routine activities as a basis to discount Dr. Dowell's opinion is harmless because the ALJ provided another specific and legitimate reason, supported by substantial evidence, *see supra*, to discount Dr. Dowell's opinion.  *See Molina,* 674 F.3d at 1115.

### 3.  Dr. Islam-Zwart

On October 9, 2017, Plaintiff was examined by clinical psychologist, Kayleen Islam-Zwart, who completed a psychiatric evaluation.  Tr. 494-501.  Dr. Islam-Zwart diagnosed Plaintiff with PTSD, unspecified personality disorder, unspecified bipolar disorder, opioid use disorder, moderate, in sustained remission, and alcohol use disorder, moderate, in sustained remission.  Tr. 495.  She opined that Plaintiff had marked limitations in performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances without special supervision, adapting to changes in a routine work setting, and completing a normal workday and work week without interruptions from psychologically based symptoms.  Tr. 495.  Dr. Islam-Zwart opined that Plaintiff had moderate limitations in understanding, remembering, and persisting in tasks by

ORDER - 48

following detailed instructions, performing routine tasks without special

supervision, making simple work-related decisions, asking simple questions or

requesting assistance, communicating and performing effectively in a work setting,

and maintaining appropriate behavior in a work setting.  Tr. 495.  Dr. Islam-Zwart

determined that Plaintiff had no limitations or mild limitations in understanding,

remembering, and persisting in tasks by following very short and simple

instructions, learning new tasks, being aware of normal hazards and taking

appropriate precautions, setting realistic goals, and planning independently.  Tr.

495.  She opined that Plaintiff's limitations would last for six to 12 months.  Tr.

496.  Further, upon mental status examination, Dr. Islam-Zwart found that

Plaintiff's thought process and content, orientation, perception, memory, fund of

knowledge, concentration, and abstract thought were all within  normal limits.  Tr.

497.  Plaintiff's insight and judgment were found to be both within and not within

normal limits.  Tr. 497.  Dr. Islam-Zwart opined that Plaintiff "would likely have

difficulty working in a regular and sustained fashion at this time, but her prognosis

for the future seems fair with access to interventions and stability."  Tr. 501.

The ALJ gave little weight to Dr. Islam-Zwart's opinion.  Tr. 22.  Because

Dr. Islam-Zwart's opinion was contradicted by nonexamining psychologist Dr.

Valette, Tr. 34-40, the ALJ was required to provide specific and legitimate reasons

for rejecting Dr. Islam-Zwart's opinion.  *Bayliss*, 427 F.3d at 1216.

a.      Internally Inconsistent

The ALJ found that Dr. Islam-Zwart's opined moderate to marked limitations were internally inconsistent with Dr. Islam-Zwart's own contemporaneous observations and testing.  Tr. 22 (citing Tr. 494-501).  Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504 F.3d at 1035; *Orn*, 495 F.3d at 631.  Moreover, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *See Connett*, 340 F.3d at 875.  The ALJ noted that while Dr. Islam-Zwart found marked limitations in Plaintiff's ability to sustain activities without special supervision and adapt to changes in a routine work setting, there was no mention of inattention or diminished persistence.  Tr. 22.  Further, the ALJ determined that Plaintiff did not exhibit signs of difficulty engaging in or following commands, but rather, she remained cooperative and capable of completing tasks and performed within normal limits.  Tr. 22 (citing Tr. 500-01).

Plaintiff argues that the ALJ's "justification for ignoring the opinion of the treating counselors and examining doctors was due to quoting some of [Plaintiff's] daily activities and quoting some of the normal findings found in [Plaintiff's] treatment records.  ECF No. 14 at 16.  Plaintiff assert that her mental health

1  symptoms varied and fluctuated over time.  ECF No. 14 at 14.  She contends it

2  would be obvious that there would be some normal and abnormal findings when an

3  individual is involved in treatment and counseling, and that Dr. Islam-Zwart would

4  have considered both the normal and abnormal findings on examination when

5  arriving at her diagnoses and opinion as to Plaintiff's mental limitations and

6  inability to work.  ECF No. 14 at 16.  As discussed *supra*, Plaintiff's mental

7  impairments and Dr. Islam-Zwart's contemporaneous observations and testing

8  during the evaluation do not support Dr. Islam-Zwart's opined moderate and

9  marked limitations.  Further, upon mental status examination, Dr. Islam-Zwart

10  found that Plaintiff's thought process and content, orientation, perception, memory,

11  fund of knowledge, concentration, and abstract thought were all within  normal

12  limits, and her insight and judgment were both within and not within normal limits.

13  Tr. 497. To the extent the evidence could be interpreted differently, it is the role of

14  the ALJ to resolve conflicts and ambiguity in the evidence.  *Morgan*, 169 F.3d at

15  599-600.  Where, as here, evidence is subject to more than one rational

16  interpretation, the ALJ's conclusion will be upheld.  *Burch*, 400 F.3d at 679; *Hill*,

17  698 F.3d at 1158 (recognizing the court only disturbs the ALJ's findings if they are

18  not supported by substantial evidence).  The ALJ provided a specific and

19  legitimate reason to discount Dr. Islam-Zwart's opined moderate and marked

20  limitations.

b.      Inconsistent with Activities

The ALJ also determined that Plaintiff's routine activities were inconsistent with Dr. Islam-Zwart's opined moderate and marked limitations. Tr. 22. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan*, 169 F.3d at 601. Here, the ALJ concluded Plaintiff's ability to engage in activities such as driving where needed, grocery shopping when needed, going to the library, and walking her two dogs routinely, were inconsistent with Dr. Islam-Zwart's opined moderate and marked limitations, including marked limitations in Plaintiff's ability to sustain activities without special supervision and adapt to changes in a routine work setting. Tr. 22 (citing Tr. 444, 500).

On this record, the activities cited by the ALJ as inconsistent with Dr. Islam-Zwart's opinions do not constitute a legitimate reason to discount Dr. Islam-Zwart's opinions. The ALJ does not attempt to explain how Plaintiff's ability to drive, grocery shop, go to the library, and walk her dogs are inconsistent with the moderate and marked limitations opined by Dr. Islam-Zwart. However, any error by the ALJ in relying on Plaintiff's routine activities as a basis to discount Dr. Islam-Zwart's opinions is harmless because the ALJ provided another specific and legitimate reason, supported by substantial evidence, *see supra*, to discount Dr. Islam-Zwart's opinion. *See Molina,* 674 F.3d at 1115.

ORDER - 52

1

**CONCLUSION**

2          Having reviewed the record and the ALJ's findings, the Court concludes the

3     ALJ's decision is supported by substantial evidence and free of harmful legal error.

4     Accordingly, **IT IS HEREBY ORDERED**:

5          1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

6          2. Defendant's Motion for Summary Judgment, **ECF No. 15**, is

7     **GRANTED**.

8          3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

9          The District Court Executive is directed to file this Order, provide copies to

10    counsel, and **CLOSE THE FILE.**

11          DATED July 28, 2020.

12                              *s/Mary K. Dimke*
                              MARY K. DIMKE
13                    UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

ORDER - 53